NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260151-U

NO. 4-26-0151

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 11, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| ROBERT W. JAMESON, | ) | No. 25CF244 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randy A. Yedinak, |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judges Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices Lannerd and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court reversed and remanded, holding that the State failed to prove by clear and convincing evidence that no condition or combination of conditions of pretrial release could mitigate the threat defendant posed to the safety of any person or the community.

¶ 2    Defendant, Robert W. Jameson, appeals the trial court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)). Defendant contends that the State failed to prove by clear and convincing evidence that he posed a real or present threat to the safety of any person or the community or that less restrictive conditions could not mitigate any threat he posed. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4    On September 25, 2025, the State charged defendant with eight counts of criminal

sexual assault (720 ILCS 5/11-1.20(a)(1), (2) (West 2024)) and two counts of criminal sexual abuse (*id.* § 11-1.50(a)(1), (2)). The charges alleged that defendant committed several offenses against a single victim either by the use or threat of force or while knowing the victim was unable to understand the nature of the acts or give knowing consent. That same day, the State filed a petition for pretrial detention, alleging that defendant had been charged with a detainable offense and posed a real and present threat to the safety of any person or persons or the community.

¶ 5 A pretrial investigation report was filed. The report stated that defendant was 86 years old, lived alone, and had a driver's license. Defendant reported that he had recently been experiencing lightheadedness when he walked, to the point of almost fainting. He stated he had lost approximately 150 pounds over the last year and a half and frequently would not eat for two to three days at a time because he was not hungry. Defendant stated he was often cold and could not get around without a walker or scooter. Defendant had no criminal history, and he scored a 0 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R).

¶ 6 On September 25, 2025, a hearing was held on the petition to deny pretrial release before Judge Randy A. Yedinak. The State proffered that the victim was a disabled adult who lived alone but had a caregiver and special needs. The State asserted that an officer who spoke with the victim stated it was apparent he had mental or intellectual disabilities. The victim's caregiver told the officers that the victim was in charge of his day-to-day living and was his own guardian, but someone was appointed to take care of his finances. She stated she called the police when she learned of the sexual assault allegations. The State indicated that the victim's brother reported that the victim was 52 years old but had the mental capacity of a child. The victim's brother stated the victim could not read or write, did not have a driver's license, required

assistance with his day-to-day living, and was naive and trusting.

¶ 7         The State asserted that, "upon speaking with the parties involved," a law enforcement officer identified defendant as a suspect. According to the officer, defendant spoke to a man from his church group and asked if he knew anyone who would be available to work on defendant's farm. The individual recommended the victim, and the victim began mowing defendant's lawn. The victim told the officer about two occasions where he and defendant engaged in sexual acts at defendant's farm. On the first occasion, the victim told defendant he did not want to participate, but he did so after defendant insisted. On another occasion, defendant asked the victim to perform sexual acts when he was driving the victim home, but the victim refused. After speaking with the victim, the officer determined that the victim did not consider himself to have ever been in consensual relationship with defendant. The victim was unable to demonstrate to the officer that he knew the difference between passive consent, affirmative consent, and coercion.

¶ 8         The State proffered that, a few days after the victim spoke to a law enforcement officer, he was interviewed at a child advocacy center. The victim discussed additional encounters with defendant and gave more details about the encounters during that interview. The victim stated that defendant forced the victim to perform oral sex on him on at least one of these occasions and that defendant struck his penis with a belt. The victim stated defendant paid him for performing sex acts on multiple occasions. The victim stated that, throughout the incidents, he told defendant that he did not want to perform the sex acts, but defendant insisted. Defendant told the victim that he would be in trouble and they would both go to prison if the victim told anyone.

¶ 9          The State proffered that defendant told officers that the victim helped him move things and did yard work for him. Defendant stated that the victim was "mentally handicapped" and defendant usually picked up the victim and brought him to defendant's house to perform work.

¶ 10         A document titled "OSPS Proffer Outline" was admitted into evidence at the State's request. The State described the document as "essentially an outline regarding the capabilities of monitoring with regards to the Office of Statewide Pretrial Services."

¶ 11         Defense counsel proffered that defendant denied the allegations and would agree to abide by any conditions of pretrial release the trial court deemed appropriate, including home confinement with electronic monitoring. Counsel stated that on the day of defendant's arrest, defendant was "making arrangements to see a physician" about the symptoms described in the pretrial report. He further stated defendant took medications for high blood pressure, a thyroid disorder, sleep apnea, and restless legs syndrome.

¶ 12         The trial court entered a written detention order finding the State had proven by clear and convincing evidence that (1) the proof was evident or the presumption great that defendant had committed a detainable offense, (2) defendant posed a real or present threat to the safety of a specific individual or the community, and (3) no condition or combination of conditions of pretrial release could mitigate the threat posed by defendant.

¶ 13         During the trial court's oral pronouncement of its ruling, the court noted it was required to consider the nature and circumstances of the charged offense. The court stated that the case involved a "terrible offense" and "terrible facts," and the weight of the evidence against defendant was very strong. The court stated that the case was difficult due to defendant's age and the fact that he appeared to be "medically unfit." The court noted that defendant had no prior

criminal history and scored a 0 on the VPRAI-R. The court stated, however, that it would be "a very easy decision" if defendant were 20 years younger. The court stated, "I have a defendant who randomly and indiscriminately chooses the most vulnerable people of society to prey upon."

¶ 14　　　　　The trial court noted that it could order defendant to stay away from the victim, but it stated it was "hard for this Court to put [the victim] in a class or category of individuals that [it] can categorically say, you have to stay away from these individuals." The court suggested it could order defendant to stay away from intellectually disabled individuals but stated it did not "even know how we're going to monitor that." The court found it would not be "realistic" to order that defendant stay away from all vulnerable people. The court noted it could place defendant on home confinement but stated that "most of these offenses occurred at his house, again, preying upon the most vulnerable individuals." The court concluded that, based on the facts and circumstances of the case, it did not have the ability with the available conditions of pretrial release to mitigate the "very high risk *** to the community" posed by defendant.

¶ 15　　　　　On October 22, 2025, defendant filed a motion for relief requesting that he be released on pretrial supervision because there were less restrictive means of ensuring the safety of the public.

¶ 16　　　　　On November 18, 2025, a hearing was held on the motion for relief before Judge Jennifer H. Bauknecht. The parties noted that defendant was using a wheelchair at that hearing. Defense counsel requested that the trial court reconsider the detention decision. Counsel asserted that defendant had already agreed to a no-contact order with the alleged victim and lacked any criminal history. Counsel requested that defendant be given "pretrial release with maximum conditions, including GPS monitoring." The court denied the motion.

¶ 17　　　　　This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19            On appeal, defendant has filed a memorandum pursuant to Illinois Supreme Court

Rule 604(h) (eff. Apr. 15, 2024). Defendant argues that the trial court's order denying him

pretrial release should be vacated because the State failed to prove by clear and convincing

evidence that he posed a real and present threat to the safety of any person or the community or

that less restrictive conditions would fail to mitigate that threat.

¶ 20            All criminal defendants are presumed to be eligible for pretrial release. 725 ILCS

5/110-6.1(e) (West 2024). However, a defendant may be detained prior to trial under the

dangerousness standard if the State files a petition and proves by clear and convincing evidence

that (1) the proof is evident or presumption great that the defendant committed a detainable

offense pursuant to section 110-6.1(a) of the Code of Criminal Procedure of 1963 (Code) (*id.*

§ 110-6.1(a)), (2) the defendant poses a real or present threat to the safety of any person or

persons or the community based on the specific articulable facts of the case, and (3) no condition

or combination of conditions of pretrial release can mitigate such a threat. *Id.* § 110-6.1(e)(1)-(3).

¶ 21            Where, as here, the parties proceed solely by proffer and documentary evidence at

the detention hearing, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51.

¶ 22            Initially, we find that defendant has waived his argument that the State failed to

prove by clear and convincing evidence that he posed a real or present threat to the safety of any

person or persons or the community by failing to include the issue in his motion for relief. See

Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("Upon appeal, any issue not raised in the motion for

relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be

deemed waived."). The motion for relief alleged only that there were less restrictive means than

detention for ensuring the safety of the public. Accordingly, we proceed to consider whether the

State proved by clear and convincing evidence that no condition or combination of conditions of pretrial release could mitigate the threat posed by defendant. For the reasons that follow, we find it did not.

¶ 23 When the State seeks detention of a criminal defendant under the dangerousness standard, it must prove by clear and convincing evidence, *inter alia*, that "no condition or combination of conditions set forth in [section 110-10(b) of the Code] can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(3) (West 2024). "[E]ven those accused of violent offenses are presumed eligible for pretrial release, and it is the State who must justify their pretrial detention." *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. The State must establish more than the base elements of a detainable offense in order to prove that no combination of conditions can mitigate the risk posed by a defendant. *Id.*

¶ 24 Section 110-5(a) of the Code (725 ILCS 5/110-5(a) (West 2024)) sets forth a nonexhaustive list of factors courts are to consider in determining what conditions of release, if any, will reasonably ensure the safety of any person or the community and the likelihood that the defendant will comply with the conditions of release. These factors include, *inter alia*, (1) the nature and circumstances of the charged offense, (2) the weight of the evidence against the defendant, (3) the nature and seriousness of the real and present threat to the safety of any person or the community that would be posed by the defendant's release, and (4) the history and characteristics of the defendant. *Id.* § 110-5(a)(1)-(4). In considering the history and characteristics of the defendant, the trial court is to consider the defendant's character, conduct, physical and mental condition, family ties, employment, financial resources, ties to and length of residence in the community, history of drug and alcohol abuse, criminal history, record of

appearance at court proceedings, and whether the defendant was on probation, parole, or other release at the time of the charged offense. *Id.* § 110-5(a)(3).

¶ 25            Here, after considering the relevant statutory factors, we find the trial court erred by determining the State proved by clear and convincing evidence that no combination of conditions of pretrial release could mitigate the threat posed by defendant. We acknowledge that the charged offenses in this case were very serious and agree with the trial court that the charged offenses involved "terrible facts." However, the evidence presented at the detention hearing showed that defendant is 86 years old, has health problems, uses assistive devices to walk, and scored a 0 on a pretrial risk assessment tool. Moreover, defendant has no criminal history, and the State presented no evidence indicating that he was unlikely to abide by court orders. Contrary to the court's finding that the evidence showed defendant "randomly and indiscriminately chooses the most vulnerable people of society to prey upon," the evidence did not show that the charged conduct was part of a larger pattern, that defendant had a history of committing sex offenses, that he sought out an individual with intellectual disabilities to work for him, or that he regularly had contact with any intellectually disabled individual other than the victim.

¶ 26            Also, while the trial court noted that most of the offenses occurred at defendant's house and found that this showed that home confinement could not mitigate the risk posed by defendant, the evidence at the detention hearing showed that the victim did not have a driver's license and that defendant would drive the victim to his residence. Potential conditions of release, like home confinement and GPS monitoring, would protect against the risk that defendant would bring the victim or any other vulnerable individual to his house. While it is theoretically possible that a vulnerable individual could travel to defendant's house by some other means, nothing in the State's proffer indicated that this was likely to occur. Notably, the

applicable standard is whether any conditions of release exist that can *mitigate* the risk posed by the defendant, not completely eliminate it. See *People v. Farah*, 2025 IL App (4th) 250322-U, ¶ 42 ("Finding that there were theoretically possible ways in which pretrial supervision might fail falls short of 'clear and convincing evidence' that no conditions can 'mitigate' the threat. [Citation.] Mitigation of a risk *** does not require the *elimination* of any conceivable risk." (Emphasis in original.)).

¶ 27 Under the circumstances presented in this case, we conclude the State failed to prove by clear and convincing evidence that available conditions of release (which could potentially include an order to stay away from the victim and other intellectually disabled individuals, home confinement, and electronic monitoring (see 725 ILCS 5/110-10(b) (West 2024)) could not mitigate the threat posed by defendant.

¶ 28                    III. CONCLUSION

¶ 29 For the reasons stated, we reverse the trial court's judgment and remand the matter for the court to consider the relevant factors under section 110-5(a) of the Code (*id.* § 110-5(a)) to determine the appropriate conditions of pretrial release under section 110-10(b) of the Code (*id.* § 110-10(b)).

¶ 30 Reversed and remanded.